■ TAMIKA CAPERS et al., Respondents, v RUDOLPH GIULIANI, as Mayor of the City of New York, et al., Appellants. [677 NYS2d 353] —Order, Supreme Court, New York County (Jane Solomon, J.), entered August 21, 1997, granting plaintiffs' motion for injunctive relief and certifying them as a class, and denying defendants' cross-motion to dismiss the complaint, unanimously reversed, on the law, without costs, plaintiffs' motion denied, defendants' cross-motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint as against them.

The individual plaintiffs are public-assistance recipients assigned under New York City's Work Experience Program (WEP) to clean streets and remove debris in WEP assignments under the supervision of the City's Departments of Transportation and Sanitation. They itemize some of the less-attractive tasks to which they are assigned within the rubric of their sanitation-related jobs. As participants in the program, plaintiffs are considered to be public employees (Social Services Law § 330 [5]) within the meaning of the Public Employee Safety and Health Act, codified in Labor Law § 27-a. That Act governs working conditions for any government-agency employee. The State Department of Labor's regulations (12 NYCRR 800.3) incorporate the Federal standards of the Occupational Safety and Health Act.

Plaintiffs' claim that their assignments violate United States Occupational Safety and Health Administration (OSHA) standards. Plaintiffs contend, among other things, that they are not adequately provided with personal protective clothing and

equipment; that they have inadequate access to toilet facilities and potable water; that they are not adequately protected from traffic; that they are inadequately informed about, and trained to avoid, job hazards; and that there is inadequate supervision. Among the factual allegations made in support of the enumerated claims are that their orange safety vests are dirty, that the nature of their work gets their clothes dirty, that insects can bite through their clothing, that they have inadequate protection from the cold, that rain ponchos do not keep workers sufficiently dry and that the nature of their work exposes their unprotected hands to pathogens. Plaintiffs urge that these work conditions expose them to possible death or serious physical harm. They contend that Social Services regulations require that WEP participants be provided uniforms, hats, gloves, shoes, boots and protective clothing, or allowances therefor, and appropriate tools and equipment (18 NYCRR 385.3, 385.12 [i]; 385.13 [g] [4], in effect at time action was commenced, repealed and replaced by 12 NYCRR 1300.4 [a] [3], generally requiring supportive services). Plaintiffs further contend, as a predicate for their equal-protection claim, that regular City employees receive more favorable treatment, especially insofar as those employees are afforded a grievance procedure that protects complaining workers from retaliation, which also gives rise to a due-process claim. They contend that the City's noncompliance with health and safety regulations in their regard is systemic and pervasive. Plaintiffs sue the State defendant on the basis of its alleged failure to supervise the municipal defendants.

However, plaintiffs do not dispute that they have not availed themselves of the administrative procedures set forth in the Labor Law to raise these claims. Hence, while plaintiffs argue that relegating these claims to the realm of administrative relief misperceives the nature of the relief sought, the issues before us remain procedural.

After commencing the action, plaintiffs moved to be certified as a class and for preliminary injunctive relief. Defendants, invoking the doctrine of exhaustion of administrative remedies, cross-moved to dismiss the complaint. The IAS Court granted the motion, denied the cross-motion and certified a class consisting of WEP workers assigned to outdoor work by the two municipal agencies. The court enjoined defendants from assigning WEP participants to outdoor tasks in the absence of training, provision of appropriate equipment and safety measures, or availability of toilets, potable water and wash-up facilities. The court also enjoined retaliation against

WEP participants bringing grievances and directed defendants to expedite any administrative grievance proceeding commenced as a consequence of any violation of that injunction.

However well founded may be plaintiffs' substantive complaints, and however well intended the court's exercise of its equitable jurisdiction, dismissal is required by well-established procedural rules.

Initially, plaintiffs' substantive claims are governed by the Public Employee Safety and Health Act, codified in the Labor Law and enacted to ensure public employees work places free of recognized hazards and to reasonably and adequately protect their lives (*Hartnett v New York City Tr. Auth.*, 86 NY2d 438). The Social Services Law, under which the WEP is carried out, by defining the "commissioner" to be the Commissioner of Labor and the "department" as the State Department of Labor (Social Services Law § 330 [1] [a], [b]), and WEP participants as public employees, "[n]otwithstanding any other provision of this chapter or the labor law" (Social Services Law § 330 [5]) places the program under the aegis of the Labor Law for employment purposes.

Labor Law § 27-a (2) states that "[a] safety or health standard promulgated under the provisions of this section shall apply to every public employee and the commissioner shall have exclusive authority to enforce such standard in accordance with the provisions of this chapter, notwithstanding any other safety or health standard or any other provision in this chapter or in any other general, local or special law or charter." Section 27-a (3) then specifies some of the obligations of public employers with respect to such hazards, incorporating OSHA standards by reference, and the commissioner is directed to promulgate State standards by section 27-a (4). An employee who believes that a standard is violated may request an inspection upon notice to the commissioner (§ 27-a [5]), who is given enforcement capabilities upon a determination of a violation or that imminent danger exists (§ 27-a [6]), in furtherance of which the commissioner must order compliance and may establish a penalty. The New York State Occupational Safety and Health Hazard Abatement Board also exercises powers, duties and prerogatives under the statute (§ 27-a [15]).

Underscoring not only the availability, but also the exclusive domain, of administrative redress, the Social Services Law further vests authority in the Department of Labor to promulgate a conciliation procedure specifically for WEP participants' claims and, if the conciliation procedure is ineffective, to require a fair hearing (Social Services Law § 341 [2]).

It is well settled that "[a] litigant who seeks to challenge a determination of an administrative agency must exhaust all possibilities of obtaining relief through administrative channels before appealing to the courts" (*Matter of Frumoff v Wing*, 239 AD2d 216, 217; *Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation*, 87 NY2d 136, 140). The question whether "judicial review is permissible despite the availability of administrative review turns on whether the nature of the proceeding is to compel an administrative agency to perform a ministerial act, or to review an administrative action already undertaken" (*Matter of Frumoff v Wing, supra*, at 217). If "an agency's action is challenged as either unconstitutional or wholly beyond its grant of power * * * or when resort to an administrative remedy would be futile * * * or when its pursuit would cause irreparable injury", then exhaustion of administrative remedies may be excused (*Watergate II Apts. v Buffalo Sewer Auth.*, 46 NY2d 52, 57). Those exceptions do not apply to the matter before us. Although plaintiffs purport to raise constitutional claims, they cannot maintain that the Department of Labor's grievance authority is unconstitutional. Rather, when the Legislature has conferred exclusive original jurisdiction upon a specified agency in connection with the administration of a statutory regulatory program, "the Supreme Court's power is limited to article 78 review, except where the applicability or constitutionality of the regulatory statute * * * are in issue" (*Sohn v Calderon*, 78 NY2d 755, 767), which is not challenged herein. In any event, the constitutional claims depend on the development of a factual record, responsibility vested in the agency (*see, Matter of Schulz v State of New York*, 86 NY2d 225, 232 *cert denied* 516 US 944). Moreover, whether defendants have violated health and safety rules manifestly is an interpretive exercise, requiring, in the first instance, the agency's review of the claims, and, if reasonably determined, judicial deference to the agency's findings (*Rodriguez v Perales*, 86 NY2d 361, 367; *Goodwin v Perales*, 88 NY2d 383, 392). Since the very matters under review are inherently technical matters for which expertise is reposed in the Department of Labor, review by this Court without a prior agency determination will be inconsistent with sound principles of administrative review.

Nor was the injunctive relief providently granted. An applicant for preliminary injunctive relief must demonstrate a likelihood of success on the merits, irreparable injury if the injunction is not granted and that a balancing of the equities favors the applicant (CPLR 6301; *Aetna Ins. Co. v Capasso*, 75 NY2d 860, 862). However, there was no apparent fact-finding,

let alone a supported finding of each prerequisite for the issuance of this relief. A preliminary injunction is extraordinary relief, accompanied by financial and other safeguards (*Uniformed Firefighters Assn. v City of New York*, 79 NY2d 236, 241), in addition to the procedural safeguard, unsatisfied in this case, warranting judicial circumspection in granting such relief. Our conclusions render the issue of class certification academic. Concur—Milonas, J. P., Williams, Tom, Andrias and Saxe, JJ.